# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GARCIA,<br><br>          Plaintiff,<br><br>     v.<br><br>EDWARD ALMIEDA, et al.,<br><br>          Defendants.<br>_____/ | CASE NO. 1:03-cv-06658-LJO-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT KATUKOTA'S MOTION FOR SUMMARY ADJUDICATION BE GRANTED, CONCLUDING THIS ACTION IN ITS ENTIRETY<br><br>(Doc. 197)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Defendant Katukota's Motion for Summary Judgment**

**I.     Procedural History**

Plaintiff William Garcia ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed November 24, 2003. Following earlier motions for summary adjudication by Defendants Snow, Nguyen, Smith, Ramirez,[1] and Bradish, the only remaining claim in this action is against an Eighth Amendment medical care claim against Defendant Katukota ("Defendant").[2]

///
///
///

---

[1] Identified as Ramerez in the complaint.

[2] Defendant was erroneously identified by her first name, Vijaya, in the complaint.

1

On September 17, 2007, Defendant filed a motion for summary adjudication on the claim against her. (Doc. 197.) Plaintiff filed an opposition on October 9, 2007, Defendant filed a reply on October 15, 2007, and Plaintiff filed a surreply on October 22, 2007.[3,4] (Docs. 200-202.)

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

---

[3] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on July 29, 2004. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 20.)

[4] In her reply, Defendant argues in part that Plaintiff's opposition should not be considered because it was not timely and because it does not comply with Local Rule 56-260(b). Even without affording Plaintiff the benefit of the mailbox rule, to which he is entitled, Plaintiff's opposition was timely filed since the 21st day, October 8, fell on a holiday. Fed. R. Civ. P. 6. Further, although Plaintiff failed to reproduce Defendant's statement of undisputed facts and admit or deny each fact as required under the Local Rules, the Court exercises its discretion to overlook the deficiency and consider the opposition. However, Plaintiff did not seek leave to file a surreply and the additional arguments set forth therein relating to the merits of his claim are not considered by the Court.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e). Plaintiff's complaint is verified and will be considered by the Court in resolving Defendant's motion to the extent that it sets forth admissible facts. The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

**III.    Undisputed Facts**

1. Plaintiff is an inmate who was incarcerated at the California State Prison Substance Abuse Facility ("CSTAF") in Corcoran, California during the time period relevant to the claim in this action.
2. Plaintiff did not graduate from high school, only completing the 10th grade. Although he has taken some college courses, he has no medical training and has not taken any courses in medicine or nursing.

///

3. Defendant's involvement in Plaintiff's medical care relevant to his claim against her commenced on or about September 1, 2001, and continued until August 13, 2002, which was the last time Defendant saw Plaintiff as a patient.

4. Defendant was a licensed medical doctor employed by the California Department of Corrections and Rehabilitation ("CDCR") at CSATF from approximately January 2001 until August 23, 2002.

5. During the course of her employment at CSATF, Defendant examined and provided medical treatment to Plaintiff.

6. Defendant was a staff physician at CSATF. Her duties were to evaluate the health care concerns of inmate patients and provide, or request for them, appropriate medical treatment while applying CDCR-approved criteria for the provision of health care. Defendant also directed other institutional medical staff, such as nurses and medical technical assistants, in the provision of medical care to inmate patients.

7. On November 27, 2001, Defendant examined Plaintiff for his complaint of abdominal pain, and noted that he had a history of acid reflux, had previously been diagnosed with a hiatial hernia, and was a smoker. On physical exam, Defendant noted that Plaintiff's abdomen was soft, and bowel signs were active, with no guarding or rebound. Defendant's diagnosis was that the abdominal pain was due to either Plaintiff's hiatial hernia or gastritis. Defendant counseled Plaintiff to stop smoking and prescribed the medications Pepcid, Gaviscon and Donnatal for Plaintiff, who was to be seen for a follow-up appointment in forty-eight hours if the pain continued.

8. On February 20, 2002, Defendant ordered an ultrasound of Plaintiff's gall bladder and pancreas to rule out stones, and ordered lab tests including Amylase (an enzyme test to rule out pancreatitis), CBC (complete blood count), Panel 23 (a comprehensive metabolic panel), thyroid and hepatitis profiles, and HIV. Defendant also ordered a CT scan of the abdomen, liver and spleen to rule out cirrhosis, and prescribed Zantac and Gaviscon. Plaintiff was to be rechecked at a follow-up appointment in two weeks.

///

9. On June 4, 2002, Defendant noted in Plaintiff's medical record that an ultrasound of Plaintiff's gallbladder had been ordered, and that he should have a follow-up.

10. On July 14, 2002, Defendant renewed various medications for Plaintiff and noted that an upper GI series exam and an endoscopy had been ordered.

11. On August 13, 2002, the last time Defendant saw Plaintiff as a patient, Defendant prescribed Prilosec, Maalox, and Zantac for Plaintiff's stomach symptoms.

12. Between September 2001 and August 2002, Plaintiff was seen many times by medical doctors at CSATF for his complaints of stomach pain and his symptoms, tests were run, diagnoses were made, and medications were prescribed to Plaintiff.

13. When Plaintiff saw GI specialist Dr. Bhaika on November 5, 2003, he did not order Vicodin or any narcotic medication to treat Plaintiff's symptoms or pain.

**IV.    Eighth Amendment Medical Care Claim**

Plaintiff's claim arises from Defendant's alleged failure to provide him with appropriate medical care following his complaints that he had pain in his lower left stomach, had a hard time breathing, and had a tingling sensation running through his body.  (Doc. 1, Comp., ¶7.)  On November 2, 2001, Plaintiff was seen by Defendant for his complaints.  (Id.)  Defendant checked Plaintiff's stomach and asked Plaintiff about his medical history.  (Id., ¶8.)  Plaintiff explained that he had been diagnosed with a hiatal hernia/peptic duodenitis and was on Prilosec for the condition. (Id.)  Defendant ordered Pepcid/Gaviscon, a blood test, and an ultrasound.  (Id.)

On February 1, 2002, Plaintiff again saw Defendant and complained that he was in pain and could not eat solid food.  (Id., ¶12.)  Defendant asked if he had received the tests she ordered and was told no.  (Id.)  Defendant said she would set up more tests, including a blood test, an ultrasound, a CT scan, and an x-ray.  (Id.)

On July 31, 2002, Plaintiff again saw Defendant and told her that he was in a lot of pain and could not get any help.  (Id., ¶44.)  Defendant told Plaintiff that there was nothing she could do for him and had him removed from her office when he said that she had been treating him since November of 2001 and nothing she had done helped.  (Id.)

///

1    Finally, Plaintiff saw Defendant again on August 13, 2002, at which time Defendant asked
2  if any doctor had prescribed pain medication for Plaintiff. (Id., ¶51.) Plaintiff said no and Defendant
3  said she would prescribe Prilosec, Malox, and Zantac.

4    "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate
5  must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096
6  (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part
7  test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by
8  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or
9  the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was
10 deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059
11 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th
12 Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a
13 purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused
14 by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be
15 manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or
16 it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin
17 at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical
18 treatment, the delay must have led to further harm in order for the prisoner to make a claim of
19 deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd.
20 of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

21    Defendant argues that she is entitled to summary adjudication on the claim against her
22 because she did not act with deliberate indifference to Plaintiff's medical needs. Defendant argues
23 that she never refused to examine or treat Plaintiff, and that she never intentionally or knowingly
24 caused Plaintiff any pain, suffering or injury.[5] In support of her motion, Defendant submits evidence
25 that on November 27, 2001, she saw Plaintiff for his complaint of abdominal pain, and noted that

---

[5] Page 8 of Defendant's declaration was not submitted to the Court. In resolving Defendant's motion, the Court finds it unnecessary to rely upon any evidentiary facts set forth in the missing page, but notes the omission for the record.

6

1  he had a history of acid reflux, had previously been diagnosed with a hiatial hernia, and was a
2  smoker. (Undisputed Fact 7.) Defendant examined Plaintiff and noted that his abdomen was soft,
3  and bowel signs were active, with no guarding or rebound. (Id.) Defendant's diagnosis was that the
4  abdominal pain was due to either Plaintiff's hiatial hernia or gastritis. (Id.) Defendant counseled
5  Plaintiff to stop smoking and prescribed the medications Pepcid, Gaviscon and Donnatal for
6  Plaintiff, who was to be seen for a follow-up appointment in forty-eight hours if the pain continued.
7  (Id.)

8  On February 20, 2002, Defendant ordered an ultrasound of Plaintiff's gall bladder and
9  pancreas to rule out stones, and ordered lab tests including Amylase (an enzyme test to rule out
10 pancreatitis), CBC (complete blood count), Panel 23 (a comprehensive metabolic panel), thyroid and
11 hepatitis profiles, and HIV testing. (U.F. 8.) Defendant also ordered a CT scan of the abdomen,
12 liver and spleen to rule out cirrhosis, and prescribed Zantac and Gaviscon. (Id.) Plaintiff was to be
13 rechecked at a follow-up appointment in two weeks. (Id.)

14 On June 4, 2002, Defendant noted in Plaintiff's medical record that an ultrasound of his
15 gallbladder had been ordered, and that he should have a follow-up. (U.F. 9.) On July 14, 2002,
16 Defendant renewed various medications for Plaintiff and noted that an upper GI series exam and an
17 endoscopy had been ordered. (U.F. 10.) On August 13, 2002, the last time Defendant saw Plaintiff
18 as a patient, Defendant prescribed Prilosec, Maalox, and Zantac for Plaintiff's stomach symptoms.
19 (U.F. 11.)

20 Defendant points out that between September 2001 and August 2002, Plaintiff was examined
21 and treated by many medical doctors at CSATF for his complaints of stomach pain and his
22 symptoms, tests were run, diagnoses were made, and medications were prescribed. (U.F. 12.)
23 Further, when Plaintiff saw GI specialist Dr. Bhaika on November 5, 2003, he did not order Vicodin
24 or any narcotic medication to treat Plaintiff's symptoms or pain. (U.F. 13.)

25 Defendant contends that although the diagnosis and treatment plan may have changed, during
26 the time she was treating him, he had been diagnosed with hiatal hernia and irritable bowel
27 syndrome, which are chronic and not curable. (Doc. 197-5, Katukota Dec., ¶29.) Defendant
28 contends that narcotics to control pain, such as Vicodin, are not prescribed for IBS or hiatal hernia,

7

and that pain control and symptomatic control for both are achieved through medications such as Tylenol (pain reliever), Donnatal (an anti-spasmodic), fiber tablets, Prilosec (an acid reducer), and Colace (a stool softener), all of which were prescribed for Plaintiff. (Id., ¶26.) Defendant argues that her treatment of Plaintiff was within the community standard of care, and therefore, she did not act with deliberate indifference. (Id., ¶30.)

The Court finds that Defendant has met her initial burden of informing the Court of the basis for her motion, and identifying those portions of the record which she believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). At this stage in the proceedings, Plaintiff may not rely on the general allegations in his complaint or on general assertions of wrongdoing by Defendant or other medical providers. Plaintiff must come forth with specific evidence that Defendant "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837.

The Court has carefully reviewed Plaintiff's arguments and the exhibits referenced by Plaintiff. The Court will consider Plaintiff's medical records to the extent that the records are clear

///

and speak for themselves. However, to the extent that interpretation of the records by an expert is necessary, Plaintiff's lay opinions may not be considered.

Plaintiff submits the declarations of his sisters, Kathy Hope and Sheila Tolford, and four inmate witnesses, Reginaldo Dominguez, Steven Rogers, Michael Baldwin, and David Schnider. (Doc. 200, Opp., court record pgs. 1:28-2:3 & 78-99.) However, all six are lay witnesses and provide no information specific to Defendant's treatment of Plaintiff. At most, the six can attest that Plaintiff was ill and in pain during the relevant time period, facts which Plaintiff himself has attested to.

Next, Plaintiff refers the Court to a number of medical records. Plaintiff was admitted to Mercy Hospital in Bakersfield on November 4, 2003, for abdominal pain and rectal bleeding, and a colonoscopy consult with Dr. Krishan was planned. (Id., pgs. 23 & 25.) The record notes that Plaintiff had been seen on March 14, 2003, by Dr. Krishan and at the time, Plaintiff had been thought to have inflammatory bowel disease or irritable bowel disease. (Id.) The colonoscopy revealed no significant peptic ulcer disease. (Id.)

On September 28, 2005, Dr. Bhatt referred Plaintiff for a surgery consult for cholecystitis.[6] (Id., pg. 42.) The consultant, Dr. Schuster, did not deem a follow-up or further surgery necessary. (Id.) On November 3, 2005, Plaintiff was seen for a complaint of pain and the nurse noted the complaint as one of gallbladder pain. (Id., pg. 45.) On November 4, 2005, Dr. Bhatt referred Plaintiff to Dr. Rodriguez at Mercy Hospital for surgery following Dr. Schuster's decision that treatment was not warranted. (Id., pgs. 48-50.) Plaintiff also refers the Court to his inmate appeals and in particular, an appeal decision which stated in part, "Further information gathered indicates that during a medical visit with Dr. Bhatt . . . ." (Id., pg. 58.) Plaintiff contends this statement represents prison officials' agreement, finally, that he had cholecystitis rather than IBS. (Id.) Next are some medical records and reports from 2006 relating to the cholecystitis and the removal of Plaintiff's gallbladder. (Id., pgs. 69-73.)

///

---

[6] The Court takes judicial notice of the fact that cholecystitis is inflammation of the gallbladder.

     Plaintiff argues that Defendant "is relying on her 'MERE WORD' to substantiate her claim that she did not violate plaintiff's rights under the law," and that she failed to take the time to have Plaintiff correctly diagnosed through comprehensive testing. (Id., 7:2-8.) Plaintiff argues that Defendant assumed he had IBS and failed to conduct proper testing to support her diagnosis. (Id.,7:6-10.) Plaintiff argues that most of the testing he underwent occurred after Defendant left her position, and that she refused to send him to a specialist or provide him with a HIDA scan, which would have shown he had chronic cholecystitis. (Id., 7:12-17.) Plaintiff contends that by prescribing medication to Plaintiff for a condition he did not have, by failing to do diagnostic testing to confirm Plaintiff did or did not have IBS, and by misdiagnosing and/or failing to diagnose his gallbladder problem, Defendant acted with deliberate indifference in violation of his rights. (Id. 7:21-26 & 18:21-19:12.) Plaintiff contends that his condition was life threatening because if his gallbladder had ruptured, he would have died. (Id. 8:6-9.)

     Plaintiff was eventually diagnosed with cholecystitis, and had his gallbladder removed. However, the bare fact that a different diagnosis and course of treatment was ultimately prescribed is insufficient to raise a triable issue of fact that the previous diagnoses and courses of treatment were so woefully incorrect and/or inadequate that they constituted deliberate indifference. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

     Defendant is a medical doctor. Therefore, she is qualified to render an opinion on diagnoses, testing, and treatments as an expert. Plaintiff is a layman and although he may offer his opinion on matters within his personal knowledge, he may not venture into areas that require medical expertise. While based on medical records submitted by Plaintiff, Plaintiff's condition was ultimately diagnosed as chronic cholecystitis necessitating removal of his gallbladder, the narrow issue here is

///

whether Defendant, during the time period she was treating Plaintiff, "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety." Farmer, 511 U.S. at 837.

Plaintiff has not submitted any evidence that based on the symptoms he presented, Defendant's course of action, including diagnoses, testing, and treatment, "was medically unacceptable under the circumstances," and chosen "in conscious disregard of an excessive risk to Plaintiff's health." Jackson, 90 F.3d at 332 (internal citations omitted). It is not enough for Plaintiff to state that the medical treatment provided was not helping and that he was ultimately diagnosed with a different medical problem than he was thought to have during the time Defendant was involved in his care. Plaintiff must present evidence that Defendant possessed the requisite state of mind and he has not done so.

With respect to the incident in which he was allegedly turned away on July 31, 2002, the only date Defendant refused to do anything for him, Plaintiff was seen the next day by another physician, who ordered an upper GI which was performed on August 2, 2002. (Doc. 1, Comp., ¶¶48, 49.) There is no evidence that Plaintiff suffered further harm as a result of the one day delay in seeing another physician. McGuckin at 1060 (citation omitted). Defendant is entitled to judgment.

## V.  Conclusion and Recommendation

Plaintiff has not submitted any admissible evidence supporting his claim that Defendant rendered medical care so deficient that it constituted deliberate indifference. Therefore, Defendant is entitled to judgment as a matter of law on the claim against her.

For the reasons set forth herein, it is HEREBY RECOMMENDED that Defendant Katukota's motion for summary adjudication, filed September 17, 2007, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

///

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 22, 2008**                             /s/ Sandra M. Snyder
                                                                     UNITED STATES MAGISTRATE JUDGE